**DICKERSON v. STRAUSS et al. (No. 8254.)***

(Court of Civil Appeals of Texas. Galveston. Feb. 9, 1923. Rehearing Denied March 8, 1923.)

**1. Frauds, statute of ⊜➝76—Oral transfer of interest in partnership not shown to own real estate is valid.**

An oral contract to transfer an interest in a partnership is not invalid under the statute, where there was no showing that the partnership owned any real estate.

**2. Frauds, statute of ⊜➝18(4)—Assumption of debts in consideration of transfer of interest in partnership is not promise to pay debt of another.**

An agreement in consideration of the transfer of an interest in a partnership to assume the debts for which the retiring partner was liable as a member of the firm is not a promise to pay the debt of another, but is an original undertaking which the statute does not require to be in writing.

**3. Partnership ⊜➝213(2)—Partner alleging sale of interest for release of debts need not deny partnership under oath.**

The failure of a partner to deny under oath the existence of the partnership does not entitle plaintiffs to a judgment against him for a partnership debt, where he expressly admitted the existence of the partnership at one time, and alleged that he had transferred his interest therein to plaintiffs, who had agreed to assume the debts.

**4. Partnership ⊜➝214—Pleading alleging assumption of debts in consideration of transfer of interest in partnership held to set out agreement with sufficient particularity.**

An answer by defendant, sued as a partner, alleging that plaintiffs had agreed to pay the indebtedness which he owed, as shown by his letter to plaintiffs' agent, in consideration of defendant's transfer to them of his interest in the partnership, set out the agreement with sufficient particularity.

**5. Trial ⊜➝140(1)—Inconsistencies in testimony do not take from jury right to determine credibility of witness.**

Even if there were some apparent inconsistencies in the testimony of a witness, that did not take from the jury the right to pass upon the credibility of that witness or make his testimony insufficient to support a finding by them of the agreement to which he testified.

**6. Partnership ⊜➝239(3)—Transfer of interest held sufficient consideration for assumption of debts for which retiring partner was liable.**

The transfer by a retiring partner of his interest in the partnership is sufficient consideration to support an agreement by the transferees to pay debts for which the retiring partner was liable as member of the partnership.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by W. H. Dickerson and another against the Harrisburg Shipyard, a copartnership alleged to be composed of E. Strauss and Elbert Roberts, in which the Texas Lumber Company and others intervened. From a judgment that plaintiffs take nothing against the defendant Elbert Roberts and allowing recovery by the interveners against the plaintiffs, the named plaintiff appeals. Affirmed.

J. S. Bracewell, H. H. Cooper, and Sam R. Merrill, all of Houston, for appellant.

Boyles, Brown & Scott, of Houston, for appellee Roberts.

Baker, Botts, Parker & Garwood and Rodman S. Cosby, all of Houston, for interveners.

GRAVES, J. With only two interlineations adding details, so much of the statement affecting this cause as is immediately hereinafter copied, and which both other litigants concede to be substantially correct, is taken from appellant's brief.

"This action was originally brought by W. H. Dickerson and I. P. Poynor against the Harrisburg Shipyard, a copartnership alleged to be composed of E. Strauss and Elbert Roberts, seeking to recover an indebtedness of approximately $16,500, with a foreclosure of a chattel mortgage lien and a deed of trust lien on certain property, and seeking the appointment of a receiver for the purpose of taking charge of one seagoing barge in an incompleted state and completing the same; the petition being filed on April 30, 1919. Upon this petition and application a receiver was appointed in the person of one Herman Parsons, and under the direction of the court receiver's certificates were issued, and the construction of the barge continued until its completion, and was thereafter sold for a sum of money sufficient to discharge the receiver's certificates and the lien of the Burton Lumber Company, who furnished material for the construction of the barge, but no other funds were realized. Subsequently a judgment was taken by the plaintiffs against the Harrisburg Shipyard, and E. Strauss for their claim, and a report of the receiver received and he discharged; that said case was continued on the docket for the purpose of determining the rights of the defendant Elbert Roberts and certain interveners.

"The defendant Elbert Roberts filed an answer May 18, 1920, in which he urged a general demurrer, a general denial, and a special answer that the contract made and entered into between himself and E. Strauss with the plaintiff was in regard to a barge to be constructed, and that plaintiffs were to advance a sum not in excess of $12,000, and that $4,500 of the amount to be advanced by the plaintiff was to be applied to the payment of the obligation of the Harrisburg Shipyard, and that subsequently the plaintiffs and E. Strauss had, without the knowledge or consent of this defendant, changed the barge by building one of larger dimensions and one that required the advancement of a larger sum of money, and

⊜➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction April 25, 1923.

248 S.W.—53

that he was thereby relieved from said contract, and further pleaded that from and after the 1st of April, 1919, he was relieved of any liability in connection with or concerning the same, for on or about that date—pursuant to the terms of a letter of that date from him to E. Strauss, who was acting for plaintiffs—the plaintiffs had assumed certain obligations for which he was liable as one of the members of the partnership of the Harrisburg Shipyard, and that one of these debts was to the Texas Lumber Company and the other to the Burton Lumber Company, and that he was relieved of all obligations, and that under such agreement he was relieved of his obligation on those items (setting up the specific ones mentioned in his letter to Strauss of April 1, 1919), and that he had surrendered all right and interest he had in said Harrisburg Shipyard to them, and then pleaded by way of cross-action that he was entitled to recover over against the plaintiffs on such facts.

"The Texas Lumber Company filed its second amended intervening petition on May 26, 1921, in which it alleged that E. Strauss, I. P. Poynor, W. H. Dickerson, and Elbert Roberts were liable to defendant for the sum of two judgments obtained in the county court at law against E. Strauss and Elbert Roberts, one in the sum of $569.49 and the other in the sum of $359.72; and that after the rendition of said judgments and about the 1st day of April, 1919, the plaintiffs, I. P. Poynor and W. H. Dickerson, in consideration of the surrender and transfer by Elbert Roberts of his interest in the Harrisburg Shipyard, had assumed and contracted to pay the indebtedness of such intervener, and that they had thereby become liable and bound to pay the same.

"The Burton Lumber Company also filed its first amended plea in intervention on May 23, 1921, in which it also alleged that it was the owner of certain notes executed by E. Strauss and Elbert Roberts, and that the plaintiffs, I. P. Poynor and W. H. Dickerson, had agreed, contracted, and bound themselves to assume and become liable for the payment of the same in consideration of the surrender and relinquishment by said Elbert Roberts of his interest in said Harrisburg Shipyard, and his interest in the copartnership venture in completing said barge, and that it was thereby entitled to a judgment against plaintiffs in said amount.

"The plaintiff, I. P. Poynor, filed an affidavit, denying the existence of any partnership between E. Strauss, W. H. Dickerson, Elbert Roberts, and himself, and specially denying under oath that he ever made or entered into any contract or agreement whereby he agreed to pay the Burton Lumber Company any sum or sums of money other than what sum of money that might become due for the construction of one seagoing barge.

"The plaintiffs filed a supplemental petition in reply to the pleading of the several defendants and interveners, urging a general demurrer to each of said pleadings as well as special exceptions, all of which were overruled. The case was submitted before a jury, in the form of two special issues, which, together with the answers thereto, are as follows:

"1. Did plaintiffs, I. P. Poynor and W. H. Dickerson, authorize E. Strauss to make an agreement with Roberts whereby Roberts would relinquish his interest in the Harrisburg Shipyards and Poynor and Dickerson would assume the payment of the debts set out in the letter dated April 1, 1919? You will answer, 'They did,' or, 'They did not,' as you find the facts to be. To which the jury answered, 'They did.'

"2. Did said Poynor and Dickerson, or the said Poynor, Dickerson, and Strauss, acting through Strauss, purchase the interest of Elbert Roberts in the Harrisburg Shipyard, and in payment therefor Poynor and Dickerson assume the payment of the debts listed in the letter of April 1, 1919? You will answer, 'They did,' or, 'They did not,' as you find the facts to be. To which the jury answered, 'They did.'

"After the rendition of their verdict the court entered a judgment in favor of the plaintiffs against E. Strauss in the sum of $16,561, that plaintiffs take nothing as against the defendant Elbert Roberts, and, after stating a finding by the court to the effect that on, April 4, 1919, the plaintiffs, I. P. Poynor and W. H. Dickerson, purchased the interest of Elbert Roberts in the Harrisburg Shipyard, and in payment therefor the said I. P. Poynor and W. H. Dickerson assumed payment to the parties named of the debts listed in the letter of April 1st, from the said Elbert Roberts to E. Strauss, then adjudged that the Texas Lumber Company recover a judgment against the plaintiffs, I. P. Poynor and W. H. Dickerson, jointly and severally, in the sum of $1,012.83, with interest from date at the rate of 6 per cent. per annum, and that the said Burton Lumber Company recover a judgment against the plaintiffs, I. P. Poynor and W. H. Dickerson, jointly and severally, in the sum of $2,703.06; and further adjudged that as to certain indebtedness due and owing to H. Masterson and the First National Bank of Houston, Tex., upon payment of the same by the said Elbert Roberts, he should be entitled to reimbursement for such sum or sums as he might pay thereon, to be recovered of I. P. Poynor and W. H. Dickerson jointly.

"The plaintiffs, I. P. Poynor and W. H. Dickerson, filed a motion for new trial, and the plaintiff W. H. Dickerson amended said motion for new trial, which was presented to the court and overruled on September 21, 1921, and notice of appeal given, and thereafter, on September 21st, an appeal bond was duly filed, and the case brought to this court for revision of the errors committed by the trial court."

The defendant Roberts did not deny under oath the partnership alleged by plaintiffs to have existed in January, 1919, between himself and E. Strauss under the name of the Harrisburg Shipyard, but admitted that it did so exist at that time, pleading in confession and avoidance of the liability that relationship would have imposed upon him the above-mentioned assumption by the plaintiffs of the indebtedness of the partnership, in consideration of his relinquishment to them of all his interest in the concern.

[1, 2] As the quoted statement has shown, only one of the plaintiffs below, W. H. Dickerson, has appealed from the judgment so rendered. Appellant's first contention is that the general demurrer of the plaintiffs below to the alleged agreement on their part to pay the debts of Elbert Roberts, as pleaded by him and the two interveners, should have been sustained on the ground that it was within the statute of frauds, as being: First, an oral contract on the part of Roberts to convey to plaintiffs his interest in the Harrisburg Shipyard, which was admitted to consist principally of real estate; and, second, an oral promise to answer for the debt, default, or miscarriage of another. The position is not well taken. In the first place, the record fails to sustain the assertion that the shipyard "was admitted to consist principally of real estate"; on the contrary, there is neither pleading nor proof by any litigant that it owned any real estate at all, and so none that Roberts' interest therein included any. The only real estate mentioned in either pleadings or proof—and this came from the plaintiffs themselves—was that owned by E. Strauss individually, and not by the shipyard as a partnership. In the second place, the agreement of plaintiffs, Poynor and Dickerson, to pay the debts due from and owing by Roberts, as alleged by the latter and the two interveners, clearly amounted to an original undertaking on their part to pay Roberts' debts to the third persons named in the letter of April 1, 1919, for a sufficient consideration, that is, the surrender by him to them of his interest in the shipyard partnership, and hence, though oral, was not within the statute of frauds. The rule on this subject is very succinctly stated by our Commission of Appeals in the recent case of Bain v. Lovejoy (Tex. Com. App.) 234 S. W. 1096, as follows:

"The validity of a parol assumption of and promise for a valuable consideration to pay the debt of another has been uniformly upheld by the Supreme Court, and is the settled law of this state."

[3] It is next asserted that the plaintiffs below were, as a matter of law, entitled to judgment against Roberts as a member of the Harrisburg Shipyard partnership, inasmuch as they had, in their pleadings, alleged Strauss and himself to be partners under that name at the time of the transaction they complained of, January, 1919, and had pursuant thereto been awarded a recovery against the partnership; Roberts not having under oath denied the existence of such partnership. This deduction that such a legal right existed absolutely as the result of Roberts' failure to so deny the partnership is a non sequiter from the facts here appearing. The fact was not only not controverted by any one, but Roberts himself admitted in his answer that he was a member of the partnership at the time of the occurrence of the matters out of which the plaintiffs' claim arose, that is, in January, 1919; but he went further, and, by way of plea in avoidance of the liability that relation would otherwise have imposed upon him, averred that he had later relinquished his interest in such partnership to the plaintiffs in consideration of their assuming the debts listed by him in his letter of April 1, 1919, to Strauss, and that in consequence he was thereafter relieved. The jury having, on sufficient evidence, found such agreement to have been made, plaintiffs were no longer entitled to hold Roberts liable to them by reason of his original membership in the firm. It follows also, as a matter of course, that in such circumstances he was in no position to deny under oath the existence of the partnership in manner and form as alleged by the plaintiffs.

[4] Appellant's third, fourth, fifth, and sixth propositions on the appeal urge that certain demurrers and exceptions presented by himself and his coplaintiff below to the answers of appellee Roberts and the interveners should have been sustained, the grounds of these objections being that Roberts had merely set up the letter from himself to Strauss of April 1, 1919—together with the plaintiffs' alleged assumption of the debts therein listed—as the basis of his claim that they had relieved him of any further liability for the debts of the shipyard partnership, but had not alleged: First, that any actual release had been obtained; second, that either of the plaintiffs had in writing either acknowledged such agreement or taken possession of any property under it, only that Roberts ceased longer to have any interest in the business; third, the letter of April 1st, so relied on, showed on its face that it was a mere proposal—an unexecuted agreement—and there was no specific averment made as to the performance of the conditions mentioned therein; fourth, there was neither allegation that either of the plaintiffs had in writing assumed to pay such debts, nor that Strauss, as their agent, had done so, nor that they had either taken possession of or received a conveyance to any property from Roberts under such agreement. We do not think error in the overruling of these exceptions is shown; as preceding statements have indicated, the answer of Roberts alleged in substance an agreement whereby Dickerson and Poynor agreed to pay the indebtedness Roberts owed, as shown by his letter of April 1, 1919, to their agent Strauss, in consideration of Roberts' relinquishment to them of his interest in the copartnership enterprise, the letter in full being as follows:

"April 1, 1919.

"Mr. E. Strauss, Harrisburg, Texas—Dear Sir: As heretofore stated to you, upon my being released from indorsements on the following obligations:

H. Masterson .................................. $4,750 00
H. Masterson ..................................    600 00
First National Bank........................... 3,750 00
Burton Lumber Company.
Texas Lumber Company four notes on which suits have been filed, three for $500 and one for $300 and some odd dollars,

"I will have no further interest in the assets or earnings of the Harrisburg Shipyard.

"Yours truly, [Signed] Elbert Roberts."

This defense was elaborated by further averments to the effect that the plaintiffs had approached defendant for the purpose of purchasing his interest; that verbal negotiations were had by Strauss acting for Poynor and Dickerson with Roberts; that the letter of April 1, 1919, was delivered to Poynor and Dickerson through Strauss; the acceptance by Poynor and Dickerson of the agreement, which constituted the contract; the fact that immediately thereafter in conformance with the agreement, he surrendered all his interest in the Harrisburg Shipyard to plaintiffs; that they immediately assumed absolute control, custody, and supervision of the business, and continued to manage the same; that Roberts had nothing to do with the business after April 1, 1919; that, acting on the agreement, plaintiffs had so arranged the bank account at the American State Bank of Harrisburg that the money could be released from the bank without the signature of Roberts, which had theretofore been necessary; that after his severance of his connection with the partnership, additional money was put up by the plaintiffs for the business, and that the business was thereafter continued by them and under their absolute control; that the property and the possession of same was delivered to the purchasers Poynor and Dickerson.

As appears from the introductory statement, both interveners in substance also set up this assumption agreement between plaintiffs and Roberts as affecting the debts due them, further averring that it was made for their benefit, and that they were entitled to sue thereon. We think the agreement of the plaintiffs thus declared upon by all the other parties was in all respects a legal one, and that it was set out with sufficient particularity to justify the trial court in overruling the demurrer and exceptions so leveled at it; while there was no express statement as to whether the agreement was written or verbal, it seems to us from the declaratory pleadings upon it as a whole that it contemplated the relinquishment by Roberts to Dickerson and Poynor of personal property; that is, of his interest in the unfinished barge and in the then expected profits of the enterprise.

Through several propositions, appellant further assails the judgment on the ground that the evidence was insufficient to support it and the verdict of the jury on which it rested in a number of particulars; but, after a careful review of the statement of facts, we are unable to hold that any such condition is shown. The evidence is voluminous, and it is not deemed essential that it be restated here. Suffice it to say that, in our opinion, it furnished sufficient support for the verdict and judgment.

[5] Appellant's insistence that it did not appears to rest mainly upon the view that the witness Strauss, who, by deposition, testified with positive detail as to the making of the agreement in all material respects as claimed by Roberts and the interveners, was so discredited before the jury as to entitle this testimony to little or no credence; but there is no justification for any such assumption; despite what appellant points out as some apparent inconsistencies in his statements, there was nothing to take from the jury the right to pass upon his credibility any more than there was as concerned any other witness; furthermore, there was undoubtedly much of corroboration and support of him brought out in the testimony as a whole. There was upon the entire case as projected by these answering pleas a clear question of fact for the jury, and, as above indicated, they having resolved it adversely to appellant, this court is left without authority to disturb that result.

What has already been said adversely disposes of the contentions under the tenth proposition that the judgment as entered was not properly supported by the pleadings of the defendant and the interveners; we likewise hold there was no material or harmful variance between their several allegations in such pleadings and the proof they made in support of the same.

[6] Appellant's concluding propositions, again asserting a lack of support in the evidence for the separate awards in favor of the two interveners, on the ground that there was no evidence showing appellant to have received any consideration or property from defendant Roberts in return for his assumption of the debts of Roberts to each of the interveners, are likewise without merit. As has been hereinbefore indicated, we think ample consideration for the assumption agreement by Dickerson and Poynor was shown, and that the evidence in this respect fully justified, if it did not require findings in favor of the claims of the interveners.

All the assignments of appellant have been given consideration, but under the conclusion that none of them point out prejudicial error, the judgment has been affirmed.

Affirmed.